**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| BROCK SIMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-cv-00731-NKL |
| | ) | |
| MAGNUM PIERING, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER**

Pending before the Court is Plaintiff Brock Simpson's Motion to Compel Inspection of Non-Party Property, Doc. 37. For the following reasons, the motion is denied.

**I.      Background**

This is a products liability case, which arises out of an injury that Plaintiff Brock Simpson suffered on June 1, 2012, while repairing the foundation of a residential property in Lee's Summit, Missouri. The owner of that property, the Smith Family Trust, is not a party to this lawsuit, and has repeatedly denied Simpson's requests to enter onto the property to excavate and remove part of the foundation where he was injured. Accordingly, Simpson has filed the present motion to compel, seeking to gain entry onto the property via this Court's Order.

To understand the significance of the evidence that Simpson seeks, a brief explanation of the work he was conducting when he was injured is necessary.

**A.      Foundation Repair**

When a foundation settles, one way to mitigate damage is to place "piers" into the ground beneath it. A pier is constructed by attaching a steel bracket to the base of the foundation wall, and then driving a pile—similar to a rod or a pipe—through the bracket and into the ground. Piles

are typically thirty-six inches long, but they are capable of being coupled together to form a single, interconnected pile of customizable length.

In order to drive the piles deep into the ground, after the bracket is secured to the wall, a hydraulic ram assembly ("RAM") is positioned over the bracket. The RAM is secured to the bracket, and then connected to a hydraulic pump, which operates a hydraulic arm in the RAM that drives the pile down into the soil.

The individual thirty-six inch sections of pile are not connected until the process begins. First, a single thirty-six inch pile is inserted into the RAM and driven through the bracket into the ground. Once the hydraulic arm is fully extended, it is subsequently retracted, and a second thirty-six inch pile is inserted into the RAM. After the second pile is connected to the first pile that is already in the ground, the hydraulic arm drives the piles into the ground together, just as before. The process is repeated until the piles reach an adequate depth, which is determined by pressure per square inch ("PSI"). The PSI is measured as the piles are driven. Once the interconnected thirty-six inch piles approach the requisite PSI, a shorter pile, commonly referred to as a "push pipe," is inserted into the RAM. The push pipe is then driven into the ground until it reaches the requisite PSI.

After a sufficient number of piers are installed along the side of a foundation, multiple RAMs can be daisy-chained together and operated simultaneously to elevate the entire foundation. When the foundation reaches the desired elevation, the piles are partially bolted to the brackets, the RAMs are removed, and the piles are fully secured to the bracket. The piers remain in place indefinitely.

**B.     Simpson's Injury**

On June 1, 2012, Simpson was using equipment manufactured by Defendant Magnum

Piering, Inc. to install piers in a residential foundation. While installing one of the piers, having

driven the requisite number of thirty-six inch sections of pile into the ground, Simpson inserted a

push pipe into the RAM to finish driving the interconnected piles to their appropriate PSI.

According to Simpson, at a time when the PSI was well below the specified level, the RAM he

was using suddenly broke free of the bracket it was attached to and struck him in the left side of

his face, causing significant injury.

Following the incident, it was discovered that the push pipe Simpson was using had bent

inwards toward the foundation wall. According to Simpson, this redirected the force of the

hydraulic arm of the RAM against the foundation wall, which in turn pushed the hydraulic arm of

the RAM away from the wall, and pushed the RAM upwards and away from the bracket. Simpson

alleges that the combination of forces placed such an extreme amount of pressure on the single

bolt securing the base of the RAM to the bracket that it caused the bolt to shear from the bracket

completely. This, in turn, allowed the RAM to break free and strike Simpson.

C.      The Discovery Dispute

Simpson has retained Patrick Lombard, P.E. as an expert witness to determine what caused

the equipment failure. Simpson alleges that the Magnum Piering push pipe he was using was

defective, and has provided the bent push pipe to Lombard for examination. It has recently been

discovered, however, that a contractor working with Simpson on the day of the accident observed

that not only had the push pipe bent, but the pier below the bracket had also bent. Upon learning

of this, Lombard requested access to the property to excavate and examine the pier and bracket, so

as to determine whether there are any other defects in the rest of the pier. The Trust has, to this

point, denied every request.

Accordingly, Simpson filed the present motion, seeking an Order compelling the Trust to

allow him to enter onto the Trust's property to excavate, remove, and replace the pier that he was

installing when he was injured. Specifically, Simpson submits the following proposal:

1. Place tarp around the section to be excavated to prevent dust or dirt from spreading to the rest of the basement during the jackhammering process.
2. Jackhammer the concrete in an approximately 3' x 3' area to remove the concrete that was poured 6 years ago.
3. Remove the sections of concrete on the top, then dig up the gravel and dirt to expose the pier and bracket; chip concrete away from the pier and bracket if necessary.
4. Using a "Hole Hawg," remove the bolts that secure the upper push pier to the bracket.
5. Dig to the bottom of the upper push pier to fully expose the upper push pier and the top of the second push pier.
6. Remove the upper push pier by either (a) pushing it back up through the bracket, if possible, or (b) cutting a section of the second to last pier to allow the upper pier to be pushed down through the bracket.
7. Once the upper push pier has been removed, replace it with a new MP313 push pier; if the second pier has been cut, replace the second pier with a new MP313 push pier.
8. Attach the hydraulic ram to the bracket, connect the Power Team hydraulic pump, and drive the pier to 5,000 PSI.
9. Secure the new upper push pier to the bracket and remove the hydraulic ram.
10. Cut the top of the upper push pier so that it is just below the level of the floor, and plug the top of the pier; backfill the hole with the gravel and/or dirt that was removed; fill the remainder of the hole with concrete; and finish the concrete to match the rest of the floor.

Doc. 37-1, p. 2. Simpson maintains that the work can be completed in just one day.

II.     **Discussion**

The Trust opposes Simpson's motion to compel by arguing that his proposal is

impermissible under the federal rules, and, alternatively, that it would impose an undue burden.

Indeed, the Trust believes that Simpson's motion is so unreasonable, that it argues Simpson should

be required to reimburse the Trust for its attorney's fees.

A.      **Simpson's Proposal Imposes an Undue Burden on the Trust[1]**

---

[1]     As the Court finds that the proposal will impose an undue burden on the Trust, it need not address whether the request is permissible under the Federal Rules of Civil Procedure.

Discovery is "accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Pursuant to a subpoena, "a nonparty may be compelled to produce documents and tangible things or to permit an inspection." Fed. R. Civ. P. 34(c); *see also* Fed. R. Civ. P. 45(a)1(A)(iii) (providing that subpoenas may command nonparties to "produce . . . tangible things in that person's possession, custody, or control; or permit the inspection of premises . . ."). The Court is required to quash or modify a subpoena, however, if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).

In determining whether a subpoena imposes an undue burden, "the Court balances the relevance of the [request] and the requesting party's need for [the information] against the potential hardship to the party subject to the subpoena." *Covey v. Wal-Mart Stores E., L.P.*, No. 16-01262-CV-W-ODS, 2018 WL 703286, at \*1 (W.D. Mo. Feb. 2, 2018) (citing *Tyler v. Rahe*, No. 08–00129–CV–W–DW, 2014 WL 1875257, at \*1 (W.D. Mo. May 9, 2014)). The burden of proving that a subpoena imposes an undue burden lies with the party subject to the subpoena, and is a "heavy one." *Id.* However, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999) (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)); *see also Exxon Shipping Co. v. United States Dept. of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (nonparties are afforded "special protection against the time and expense of complying with subpoenas").

The Court finds that Simpson's proposed excavation would impose a burden that outweighs his demonstrated need for the evidence.

Foundation work is inherently risky. The proposed excavation—which includes jackhammering, digging up gravel and dirt, chipping concrete, using a Hole Hawg, and then

removing and attempting to replace a push pier and bracketing—inevitably has the potential to jeopardize the integrity of the foundation. Moreover, Simpson's proposal lacks any effort to reduce the risk, or shift it from the Trust to Simpson. For example, the proposal does not include a performance bond that would assure the Trust that the work will be completed as promised, does not state whether Simpson intends to indemnify the Trust should an accident occur, and does not state whether any insurance will be secured to protect the Trust from damage. *See Belcher v. Bassett Furniture Industries, Inc.*, 588 F.2d 904, 911 (4th Cir. 1978) (stating that "inspection cases . . . demonstrate the necessity of exercising precision and care" and reversing district court order that permitted inspection because, *inter alia*, it "provide[d] inadequate protection for the defendant"). The hardship Simpson's excavation would impose on the Trust is therefore substantial.

Furthermore, considering the substantial burden that the excavation would impose, Simpson fails to demonstrate a sufficient countervailing need for the evidence. Simpson argues primarily that the evidence is "highly relevant," rather than necessary. Indeed, he concedes that his expert witness, Lombard, believes he can form an opinion without the inspection. Simpson argues that Lombard's opinion would require "assumptions," but does not elaborate further. Additionally, Simpson does not explain what he will do with the push pier after he extracts it, how it will assist his case, or why he cannot simply rely on the declaration from Simpson's coworker that the push pier was bent below the bracket. *See In re Cantrell*, No. 09-mc-01158-CV-W-GAF, 2009 WL 1066011, at *2 (W.D. Mo. Apr. 21, 2009) ("If the party seeking the information can easily obtain the same information without burdening the nonparty, the court will quash the subpoena."). Simpson has simply failed to demonstrate a need for the excavation that outweighs the substantial burden it would impose on the Trust.

Entering onto the Trust's property and then excavating, removing, and replacing one of the piers that supports the property's foundation would impose an undue burden on the Trust. Therefore, the motion to compel inspection of the property is denied.[2]

## B.      Sanctions are Inappropriate

The Trust asserts that the outcome of this motion was so predictable that the Court should sanction Simpson, and award the Trust its attorney's fees incurred in responding. The Court disagrees.

The Trust moves for attorney's fees pursuant to Rule 45(d)(1), which provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and that courts must enforce this duty by imposing appropriate sanctions, which may include "reasonable attorney's fees . . . ." Fed. R. Civ. P. 45(d)(1). However, "[m]erely losing a motion to compel does not expose a party to Rule 45 sanctions." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). Rather, Rule 45(d)(1) is discretionary, and courts may impose sanctions "when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Id.* Here, there is no evidence that Simpson has acted in anything other than good faith, or that he acted with an improper purpose. It is understandable why he seeks access to the push pier that he was working on when he was injured, and that he lacked authority "on point" to support his subpoena does not mean he acted "in a manner inconsistent with existing law." *Id.* Therefore, the Trust's request for sanctions is denied.

## III.    Conclusion

---

[2]      Simpson argues that, in light of the Court's decision, Defendant should be precluded from using his inability to inspect the Trust's property as a basis for attempting to exclude the testimony of Simpson's engineering expert. The Court will not entertain the argument at this time, as it is premature.

For the reasons set forth above, Plaintiff's Motion to Compel Inspection of Non-Party Property, Doc. 37, is denied.

                                              /s/ Nanette K. Laughrey
                                              NANETTE K. LAUGHREY
                                              United States District Judge

Dated:  July 9, 2018
Jefferson City, Missouri